The first case set for argument is Sylvester v. Sacramento County Sheriff, case number 24-3390. And I understand, let's see, the Apolis will be splitting time, but go ahead, Mr. Frank, with your argument. May it please the Court, my name is Herman Frank. I am the attorney for the plaintiffs who are the biological parents, the mother and father of a person that lost his life in the hands of the county, Sacramento County Sheriff. The cause of action is a federal civil rights action under 42 U.S.C. section 1983. The issue that apparently is here, and I'm a little bit surprised at this issue because I was pretty convinced that this is not an issue in the law, but there is apparently a question of whether you can bring a wrongful death action within a federal civil rights case. Well, can we back up because, I mean, is that distinguished from a substantive due process claim? You think that wrongful death claim, there's two separate questions, whether you can bring a substantive due process claim under 1983 and whether you can bring a wrongful death claim under 1983? I think it's mainly an issue, well, first of all, the wrongful death part. We allege as a Fourth Amendment and a seizure, unlawful seizure, and we allege it also, you're correct, as a substantive due process, you know, literally a taking of life, you know, life, liberty, the pursuit of happiness. But you don't represent the estate, correct? Correct. And so this is an assertion of parents' rights, which have long been recognized in the Ninth Circuit, but not anyplace else that we know of. Correct. Okay. But wait, back up because you said Fourth Amendment. What does, what is your Fourth Amendment claim? Well, he was, he was physically seized himself. Oh, but it's still on behalf of the, that's interesting. I didn't appreciate that because you're bringing, but do the parents have standing to bring a Fourth Amendment claim? Well, one of the issues I dealt with to the trial court was the trial court was saying, you need to plead your constitutional rights, not the deceased. Right. And, and so, and, and which I believe may not be a correct statement of law because I believe to bring a wrongful death claim in a federal civil rights claim, the underlying wrongful death needs to involve a deprivation of federally protected rights. I don't understand how these are distinct because to me, you can bring a wrongful death claim. You just bring it as a, I mean, it's, it's not a wrongful death claim. It's a 1983 claim for violation of constitutional rights, which is a, in, is you've pleaded as a substantive due process claim. So I don't really understand why wrongful death is being, I mean, if he hadn't have died, you would have a claim, but because he died, you don't have a claim. Is that, I don't understand the distinction. The, the very statement you just made is exactly why the cases have developed to permit a wrongful death claim. And they'd still, they do call it, but it's not, yeah, I don't understand that because it's not a wrongful death claim. It's a 1983 claim for violation of substantive due process rights. Yeah. And your honor, I, I can tell you this. If there's anything we could get out of this case, it would be a good clarification of what is allowed and how it is allowed. Because I can tell you, even the district court judge was seemingly not quite following it. He, he cited a New Mexico district court case for the proposition that whatever wrongdoing occurred needs to be directed at the plaintiff. And in our case, you know, that's accurate. And that's why I wanted to come back to your fourth amendment claim, because I had not appreciated that in the case. I don't understand how your clients have a fourth amendment claim. My claim is this. It's not that they have a fourth amendment claim. It's that the underlying wrongful death, in my view of the law, I have to show that the wrongful death itself was a product of a violation of federally protected rights. If you have, and so I was, that's why I got into fourth amendment and 14th amendment. Counsel, in footnote three of the brought under the substitute due process component of the due process clause. And I don't think you appealed that. So if, I think as far as I'm concerned, any fourth amendment claim is waived. There's, there is no fourth amendment claim here. The way this works, counsel, I'm going to try to straighten this out a little bit. If the death were accidental, there would be no violation of federal constitutional rights. You would have no claim on behalf of the parents. If, if you somehow can show this death was intentionally and wrongfully caused by police officers, that would have violated Ryan's constitutional rights. His state would have claims under the fourth amendment, at least, and perhaps others. The parents substantive due process right that is recognized in ninth circuit precedent depends upon there having been a violation of his constitutional rights. But that's the only claim that is in front of us right now, right? The substantive due process claim of the parents. Is that correct? That is correct. And the only reason, by the way, your recitation that you just gave us, I think that is perfectly what the rule is. And I, only point I'm making, and I agree with the justice when he says you didn't appeal the fourth amendment issue. I don't, I'm sure he's correct on that. I'm only asserting fourth amendment to show that the underlying death. That, yeah, that's, that is causing confusion, but I think we can get through that. Let me ask you though, Mr. Frank, you know, we're here on a 12B6 dismissal and we have to take at face value your factual allegations. But obviously there's been a lot of information exchanged. There was an investigation. Can you explain to me when you, if and when you get to summary judgment, how the location of Ryan's cell phone and the nurse's comment to the family will get you past a summary judgment motion, if we remand this as to whether, whether there was a wrongful killing here? Yes, let me explain that. And it's more than just the phone in the field. It's more than just that and what the nurse said. Some of the other items are that when the sheriff deputy picked him up, he was picked up for parole violation for being too close to his ex and she called it in. So the sheriff deputies, they picked him up. They actually drove the wrong way to go to the jail. They took on Watt Avenue. They took a right hand turn and should take a left. And they ended up in this area where there's some kind of like a laundromat or a dry cleaner place. And then there's a field behind that. So there should have been, they shouldn't have been in that territory at all. So the other item is that when he was in the ICU, one of his relatives was looking at his dead body and noticed something about his forehead. And when she went to adjust his forehead, his entire scalp kind of came off and it was a very weird sight. But that is another event that is consistent with if he were to have been grazed by a baton at the top of his head, it might create that kind of wound. That would be something we would submit. So these are the two particulars that are in the complaint. Driving the wrong way. Can we consider those the fragments at least of the radio transmissions in whether or not at this stage? Yeah, I'm not. All I'm saying is they drove the wrong way. I mean, the radio transmissions will no doubt be allowed into evidence. But yeah, I mean, the radio transmissions show that he was kicking the windows out. He was partially out of the car, which all supports the government's theory that he's trying to get out and fill out. Well, or it's a lie, right? That's what I'm wondering. I mean, can we credit the right? Do you have the radio transmissions already? I have what I have are the investigative reports and probably somewhere in there they have. I have investigative report and there was a kind of transcription document that transcribed. It was almost like a deposition of one of the deputies, the driver. So is your position that it's not part of the complaint yet? So we can't commit, consider it a 12B6? Motion is right. The police reports, you know, they say right on them, you know, don't copy, don't put them in the public realm. So I did not put it in the public realm. I've actually been chastised for doing that in the past. So I learned my lesson. However, our position is this. This deceased is and I don't mean to be critical of him, but he was an overweight drug addict and it's a bit of a far fetched, implausible idea that he as a handcuffed individual and seat belted in the back of a car, a deputy's car could somehow undo himself, smash the window. I thought he wasn't seat belted. I thought actually the officer was reprimanded for not seat belting him. Well, there's an issue about that because we believe he was. Sounds to me like we're getting into sort of jury sorts of arguments. Could I ask you about one of the pleading questions on your Monell claim? I'd like to understand what constitutional right you think your clients have to have the death of their son investigated in a particular way. So that seems to be the crux of your Monell claim. Yes, there are two aspects of it, but what you just said is correct. The other aspect is they have a policy where they simply will not allow you to have the investigative reports. So my client, sir, how does that violate the constitution of the United States? It would be, I cite it as a procedural due process problem where he literally can't get to know the of what happened, whether he has a claim or not, whether there is evidence of foul play or not. Excuse me, counsel, but are you saying the United States constitution gives citizens a right of access to police investigative documents because they have such a powerful interest in the case? Yes. You have any authority to support that assertion? I believe this would be a case of first impression. I believe that's correct. It is a reasonable rule, though. How could a parent know what went down? I mean, literally, they don't even know the names of the people. You know, but you brought it and you got discovery and you now know those. So, OK, thank you. That answers my question. And I don't want to interfere with your rebuttal time. I would like two minutes. I'm down to two right now. The I would also like to point out the fact that they didn't even. Investigate it, you know, and talk to my clients and his family, had they done so, they would have had all the information that's in the complaint. And they didn't do that. OK, and I'm wondering why did why would they not do that? You want to reserve for rebuttal? Thank you. Yes. OK, thank you. All right. Well, from the police here. Well, let's get more specific, I think. Are we Mr. Paul? Are you up first? Oh, you're here. I'm here. All right. So wait, but you're Mr. Mr. Egan. You're speaking first. Yes. OK, there we go. Good morning. May it please the court. My name is Chris Egan. I represent individual defendant Bobby Griggs. So we've allocated our time. So, Mr. Paul, he represents the county in the remaining defendant. So Mr. Paul is going to address them in the Monell argument and also qualified immunity. I'm simply here just to discuss the 1983 portion of it. I have a feeling I'm going to be super brief here. So, you know, as we said, our complaint, they're claiming, at least in their brief, a 14th Amendment due process claim. Our position is all of the other claims are waived with respect to 1983. The district court also, in their both, I think the second amendment complaint and the third amendment complaint order also said those were not argued and therefore they're waived. The opening brief in this case didn't make. Can I ask about the state claims? There's a state claim for an UNRU claim. Is that the only state claim or are there other state claims? There were two causes of action of the complaint. That was the only. And UNRU was just it was not addressed on the merits. The district court just said, look, I'm not exercising supplemental jurisdiction. It's interesting because UNRU specifically tracks it's a state law claim that by definition specifically tracks the constitutional claim. So I'm trying to kind of figure out why they wouldn't rise and fall together. But because theoretically, if you were to win this, you would still be facing an UNRU claim in state court, right? Yeah, I don't know how that will play out. But yes, he did. He didn't rule on the state claim on the substantive due process claim. You don't disagree that our case law recognizes a substantive due process right for parents over adult children. Our argument in this case is essentially, you know, the two particular plaintiffs in this case are Ryan Sylvester and Angela Ellis, the parents. We cited the Archuleta case as one of them that's instructive. There's no unconstitutional action toward the plaintiffs in this case. There's nothing. Well, that's I mean, that's a factual point, right? Right. I mean, I understand, given the police report, why you and your clients would think this is all completely made up. I get that. But you move to dismiss under 12b-6. How do we not assume a wrongful killing for purposes of this appeal? Well, I mean, would you like me to do it factually? Is that what you're seeking? Well, the question is applying rule 12b-6 standards. How can we get to those actual questions at a 12b-6 stage? I mean, if the facts were somehow attached to the complaint, maybe you would have some basis, but they haven't done that. Is there a way you can have these facts shoehorned into a 12b-6? Well, the complaint is quite lengthy, and it does reference the recordings. It does reference, it attaches. Yes, but we don't litigate factual disputes based on dueling reports and accusations. That's why I'm having trouble with the district court's resolution of this. Yeah, I mean, our position on this is the plaintiffs themselves did not allege any unconstitutional actions against them. Well, they did allege it. I mean, they allege that their son was taken out back and murdered. How is that? Well, they're doing it under due process, and in that case... In the Ninth Circuit, we've said that there is a substantive due process claim here. You would agree under the Constitution a government officer can't murder a citizen, right? Of course, yes. So that's the allegation as I see it, but then the question whether or not, I mean, it seems like you're questioning the plausibility of it, but I don't know if we could do that at this stage, given that we can't look at any of the other evidence that you've introduced. Well, I think a lot of it was included in the complaint. So, for example, there are numerous quotes from the recordings in the complaint as to what occurred. Right, but the complaint also says all that's a lie, right? Right, but I think that's, you know, I think the court can look at it and say, is that something, is that just a speculative statement? What's speculative about... No, sorry, go ahead. No, no, no, no. I mean, what more needs to be pleaded? Well, I think there need to be specific facts to support the causes of action, and I don't think a complaint... The accusation is that your client, Deputy Briggs, murdered with the cooperation of two of her colleagues, murdered Ryan Ellis on a particular day at a particular place. Now, I understand there are lots and lots of reasons to question the credibility of that. I don't know how to resolve those kinds of questions on 12b-6, but if you can tell me, I'll listen one more try. Yeah, I mean, I'm just going by what the district court did. So the district court cited the Iqbal case, talked about, you know, looking at whether these are just conclusory allegations or whether they're supported, and the court decided those were. Right, I understand, but what more would be needed? Does she need an eyewitness to be cited in a complaint? You don't have to put evidence in a complaint. Well, the complaint, when you're looking at the complaint itself, it does say in the complaint, he was put in the backseat, he was driven, he kicked out the window. The deputy in the complaint, in one of the recordings in the complaint, says, I saw he had kicked out the window, I needed to drive in a different direction in order to, because this is a larger man, to make sure he doesn't get out and cause an injury. He drives out, jumps out the window or gets out the window, falls and hits his head on the concrete. All of that's in the complaint. So, I mean, I think the facts in the complaint don't support the conclusory allegation that he was murdered. There's just, that's just a statement by counsel. There's nothing factually in the complaint to support that and the district court. Didn't they also allege that he was taken to a field and killed there? Right. But there's, it's contradicted by everything else in the same. What about the phone, the cell phone in the middle of nowhere? I just don't see how that cell phone in the middle of nowhere has any connection to a constitutional violation. How did it get there? I don't know. I assume maybe he dropped a cell phone. I don't know. The way I took that cell phone evidence to say is that if the facts are correct about Kim kicking out the window and that's how he died, then there's no reason why the cell phone would be in the middle of a field. So that suggests that that version of facts is not correct. Yeah. Or it could just be that the cell phone was dropped before he was placed in the car. Right. Well, that's a problem. That's a factual dispute. Can I ask you briefly, does it matter for any of our legal purposes today, and Mr. Frank, I hope you might address this in rebuttal, does it matter whether Ryan and Brianna were legally divorced at the time of his death for any purposes under federal or state law? Are you asking me? Yes, I'm asking you. It's your time. Yeah. Well, I'm actually overlapping now into my co-counsel's time. So, you know, that is something that, you know, I don't know the answer to. Okay. Thank you. Okay. Now we'll hear from Mr. Paul. Morning, Your Honor. May it please the Court, Jonathan Paul on behalf of Appellees County of Sacramento, Sacramento County Sheriff's Department, Sheriff Scott Jones, Deputy Timothy Mullen, and Deputy Dick Maul. This morning, I would like to raise two points. First, I will speak to the issue with regard to the Monell claim against the Sacramento County Sheriff's Department. And secondly, I'd like to speak to the issue of qualified immunity. First, examining the Monell claim. Plaintiffs, as they have just admitted in their argument, they have just conceded that they have no authority to support their Monell claim as pled. And they do not reference any in their opening brief, and they're unable to bring any to this Court's attention today. In order to plead a Monell claim, they have to show more than just an isolated incident. They have to show that there is a improper, excuse me, that there's a more, sorry. In order to show liability for improper custom, they cannot simply predicate it upon an isolated or sporadic incidents. It must be found upon the practices of sufficient duration and frequency and consistency that the conduct has become a traditional method of carrying out policy. Plaintiffs have conceded today that they are unable to establish or cite to any authority to support their Monell claim. And therefore, I believe there's no remaining questions as to whether or not they've adequately pled Monell liability against the Sacramento County Sheriff's Department. So can you address qualified immunity? Because I mean, to me, that sort of collapses into the discussion we were just having. Because if the allegations in the complaint are true, which we have to accept at this point, that the police officers took him out and shot him, how would you have qualified immunity for that? Sure. And let me attempt to tackle the question which was posed earlier, Judge Nelson. So how do we get to those facts? Well, in ruling on a motion to dismiss, the court can, of course, consider the complaint and any exhibits thereto, as well as matters that can be judicially noticed pursuant to Federal Rule of Evidence 201. And that's provided for under Muir v. Little County of Mary Hospital. Now, that's not what the district court did though, right? I mean, the district court said this was an Iqbal or Twombly problem. Yeah, I believe that is correct. However, if we look at the third amended complaint, and specifically paragraph 11 of the third amended complaint, prior to plaintiffs stating that they can test the accuracy of the investigative report, they specifically alleged that Bobby Griggs was the deputy driving Ryan to the county jail, and that defendants Maugh and Mullen arrived at the scene following Griggs calling in and jumping out of the car. From paragraphs 12 further, they then go to dispute the other facts which they take issue with within the investigative report. So for purposes of qualified immunity, we need to ask ourselves, well, okay, so the allegations from the complaint are specifically where, what did these deputies do? Plaintiffs have alleged that Bobby Griggs was driving Ryan, the decedent, to the county jail, and deputies Maugh and Mullen arrived at the scene after he had jumped out of the vehicle. And so, does, is the law clearly established that those acts violate the Constitution? But counsel, paragraph 12, the next paragraph, says plaintiffs can test the accuracy of the sheriff's investigative report and do not, do not by referencing them herein admit the truth of what was said therein. That's correct, your honor. And there, and after that paragraph, they go on to allege all the facts from the investigative report. If you read the preceding paragraph, it does not state that they're taking those facts from the investigative report. Those are simply facts they're pleading. And I would say this is, as I'm sure the court has reviewed, this is a very, an artfully led, a pled complaint. It's 62 pages in length. It's difficult to follow. Well, that may be. I mean, I guess what I'm gathering is you're not really defending the district court's reasoning. You're coming up with an alternative basis to affirm, which is interesting that, that because we can look at this evidence because it's mentioned in the complaint, that is enough for us to be able to, I guess, do some pressure testing. I'm not sure what the law is when there's, your argument seems to be there's inconsistent allegations in the complaint, ultimately. I'm not sure that's accurate, but can, even if that's true, don't you still have to give all benefits to the plaintiff at a motion to dismiss stage, even if a plaintiff alleged inaccurate allegations? Well, I think for purposes of qualified immunity, your honor, you have to look at what they pled. And if they pled inconsistencies in their complaint, but some of those inconsistencies support the basis of qualified immunity, I would submit that the officers are entitled to qualified immunity. What they pled was that the officers wrongfully, without justification, killed Ryan Ellis. Again, there are plenty of reasons to question the credibility of those How could we grant qualified immunity on 12B6 here? Through the very paragraph I just cited, your honor, I understand the court. Go ahead. Sorry, paragraph 12. Paragraph 11, your honor, because that's the allegation they're making prior to saying they're disputing the investigative report. And they did that. And so they, if we switch the order of that, the outcome would be different. I don't understand your point. The plaintiffs are making it very clear. They contest the truthfulness of the investigative report. Again, maybe wrong. Plenty of reasons to doubt that. But you're the ones who chose to move to dismiss on the pleadings. That is correct, your honor. Okay, so I think I have your answers. Thanks. Yeah, the way the problem is, I don't see any inconsistency in the complaint. He alleges what the police report says, and then says, there was no jumping out of the patrol car. There was no problem with the handcuffs. Defendant made that all up. So that seems consistent. You say what the officer is saying, and they made it all up. And there's just no inconsistency. Respectfully, your honor, again, I would point back towards paragraph 11, because that is not based upon the investigative report. Those are plaintiff's allegations in and of themselves. I do see the court's point, what they're saying in terms of, well, plaintiff goes on to complain that this was all a setup. This was all a ruse established by deputies to make it appear as though it were an accident. However, if we just look at what plaintiffs pledged before they begin in questioning the investigative report, I believe that'd be sufficient basis for qualified immunity. And on that, your honor, if there's no further questions, I'd submit. Thank you. I will hear a rebuttal now. Oh, you've got to turn your mic on. Sorry, your honor, you would ask the question that you wanted me to answer as well. And I'm sorry, I didn't quite get the question. Question is, does it make any legal difference for this appeal, whether Ryan and Brianna were divorced at the time of his death? I, no, I'm sorry to answer so simply. First of all, they weren't divorced. There was a petition for divorce file, but this all happened in the middle of it. So it was never finalized. Okay, thank you. And okay, fair enough. One point I want to make, case site is Oklahoma City versus Tunnel, US Supreme Court case, which we cite. This does say one incident can qualify for a Monell claim. And counsel had indicated, you need more than one. That case stands for the proposition that no, you don't. The other thing I'd like to point out on rebuttal, one of the reasons we didn't get into the weeds on this, if you will, about the wrongfulness of the death is that indeed the trial court didn't. The trial court wasn't examining, here's what the police report says. Here's what you people say. Does that really add up to a wrongful death? It was more of what I would call a pure legal issue that this court can decide de novo. Whether my clients have standing to bring a wrongful death claim under the Federal Civil Rights Act as per the cases that we cited. And whether they have their own constitutional right therein. And we believe we've pledged, we've met the standard, and the case should be reversed and sent back to the trial court. Thank you. Just to ask, is there a separate case that was brought on behalf of Ryan's estate? No. Okay, thank you. Okay, thank you to both counsel, all counsel for your arguments in the case. The case is now submitted.
judges: Hamilton, NELSON, BUMATAY